SEBASTIAN DINGLEDINE

*v.*

GEORGE HERSHMAN *et al.*

1. BILL OF REVIEW—*to what extent and under what circumstances errors may be corrected.* Upon a petition to enforce a mechanic's lien, to which prior incumbrancers by mortgage were made parties, the decree found the value of the premises before the erection of the improvements, and their value with the improvements, for the making of which the mechanic's lien accrued, and then declared the rule of distribution, so that the prior mortgagees should first be paid out of the proceeds of a sale of the premises, to the extent of their value without the improvements, and upon a sale being made, the proceeds thereof were distributed according to the rule thus declared. Upon bill of review, afterwards filed by those claiming the mechanic's lien, alleging there was error in that decree in regard to the rule of distribution, it was *held*, even though there was error in that respect, it could not, equitably, be corrected upon bill of review, so as to compel the prior incumbrancers to refund any portion of what they had received, because, the sale under the decree being allowed to stand, they would have no opportunity, under a different rule of distribution limiting their proportion of the proceeds of the sale, to protect their interests by making the property bring a higher price. The only equitable mode of correcting such error in the original decree, if one existed, would be to set aside the sale and order a re-sale.

2. MECHANIC'S LIEN—*of the rule of adjustment as respects prior incumbrancers.* The rule of distribution, however, as between the prior incumbrancers by mortgage and those holding the mechanics' liens, declared in the original decree, was correct, being in conformity to the rule announced in *Croskey* v. *Northwestern Manufac. Co.* 48 Ill. 481.

3. PURCHASER *at judicial sale—how affected by a reversal.* Where a purchaser at a judicial sale is a stranger to the record, he is not chargeable

with any error which may be supposed to exist in the decree under which he purchased.

APPEAL from the Circuit Court of Brown county; the Hon. CHAUNCEY L. HIGBEE, Judge, presiding.

Certain mechanics and material-men filed their petition to enforce a mechanics' lien, making prior incumbrancers by mortgage, parties defendant. A decree was rendered, ascertaining the value of the land, declaring the rule for the distribution of the proceeds of a sale of the property, and directing a sale to be made. The decree was fully executed, and the proceeds of the sale paid over to the prior incumbrancers, the mortgagees. Subsequently, this bill of review was filed by those claiming the mechanics' lien, whereby it is sought to modify the rule of distribution declared in the original decree, on the allegation that it is erroneous, and to compel the mortgagees to refund a portion of the money received by them, in order that it may be paid over under the mechanics' lien.

Whether the error in the original decree, if there be any, can properly be corrected in this mode, is the principal question.

Mr. JACKSON GRIMSHAW, for the appellant.

Bill of review must be on error apparent. *Whitney* v. *Bank United States*, 13 Peters, 6; *Dexter* v. *Arnold*, 5 Mass. 303; *Griggs* v. *Gear*, 3 Gilm. 10; *Evans* v. *Clement*, 14 Ill. 209; Story's Eq. Pl. Sec. 407; Ibid. 420; *Turner* v. *Berry*, 3 Gilm. 544; *Garrett* v. *Moss*, 22 Ill. 365; *Getzler* v. *Saroni*, 18 Ill. 517.

The attempt to review the original decree, seems to be based upon sec. 20, act 1845, Revised Code, 1845, p. 347.

The court having once ascertained the value of the land, and fixed the distributive share of the appellant by its decree, could not, when the decree had spent its force, modify its own order.

Mr. W. L. VANDEVENTER, for the appellees.

The relief sought by the bill of review, may be properly granted.

There are two grounds for a bill of review: `

First—For error of law, apparent on the face of the decree; and, secondly, newly discovered evidence. 2 Dan. Ch. Pr. 3d ed. 1630; *Griggs* v. *Gear*, 3 Gilm. 2; *Garnett et al.* v. *Moss et al.* 22 Ill. 363; *Quarrier* v. *Carter*, 4 Hen. & Munf. 242.

And these two causes may be joined in the same bill. 2 Dan. Ch. Pr. 1630, note 4.

It may be brought for error of law, whenever the decree is contrary to the statute law. Ib. 1632, note 1.

A bill of review may be brought for error apparent on the face of the decree, without leave of court; it is filed as of right. *Griggs* v. *Gear*, 3 Gilm. 2; *Getzler* v. *Saroni*, 18 Ill. 511; 2 Dan. Ch. Pr. 1633; Story's Eq. Pl. sec. 424.

Besides, a defendant, after demurring to a bill of review, as was done in this case, is precluded from denying or questioning the plaintiff's right to file it. *Griggs* v. *Gear*, 3 Gilm. 2; 2 Dan. Ch. Pr. 1637, note 1; *Quarrier* v. *Carter*, 4 Hen. & Munf. 242. See, also, *Horner* v. *Zimmerman et al.* 45 Ill. 14.

Mr. O. C. SKINNER, for the purchasers.

I contend that the purchasers, under a decree, there being jurisdiction, are protected, though the decree be afterward reversed; that where the plaintiff is not the purchaser, or does not still hold the property, a reversal will not affect the title; that it is only when the complainant is purchaser, and still owns the property, that reversal affects title; that third parties purchasing at judicial sales, and purchasers from parties to the suit, are always protected, though the judgment or decree be afterwards reversed, for irregularity not going to jurisdiction of the court. 45 Ill. 20, 23; 13 Ill. 494, 495; 28 Ill. 272, (*Durham* v. *Heaton*); *Lavender* v. *Latimer*, 15 Ill. 80; *Fergus* v.

*Woodworth,* 45 Ill. 374 ; 39 Ill. 128 ; *Moore* v. *Neil,* 39 Ill. 656 ; *Morgan* v. *Ladd,* 2 Gilm. 414 ; *Thomas* v. *Negus,* 2 Gilm. 700.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court :

Appellees were petitioners in the circuit court of Brown county, at the September term, 1867, for liens as mechanics and material-men, on a lot of land in the possession of Charles D. Wilber, who had contracted with the petitioners to erect a hotel building thereon. The work was done and materials furnished, for the most part, by the petitioners. The ground on which it stood was purchased by Wilber of one Jacob C. Bloom, who was the owner thereof as far back as the fifteenth of June, 1866, on which day he executed four notes to one Sebastian Dingle-dine, of one thousand dollars each, payable in one, two, three and four years from date, with interest at six per cent, and on the same day he executed, his wife joining therein, a deed of mortgage on this land to secure the payment of the notes, which was duly acknowledged and recorded. Dingledine was made a defendant to the petitions, who, in his answer, set up this lien as a prior lien.

One Ira Van Olinda, also made a defendant, claimed and set up a lien prior in time to the petitioners, arising out of a trust deed executed by Wilber to one Leavitt, on the twenty-fifth of August, 1866, to secure the payment of three promissory notes of sixteen hundred and eighty-two dollars each, payable in one, two and three years, at eight per cent interest, which deed was in trust for the use of J. C. Bloom, his interest in which, he, for a valuable consideration, had sold and assigned to Van Olinda, and put him in possession of the premises. This deed was recorded on the third of September, 1866.

No one of the petitioners claimed any lien of a date anterior to May, 1867.

The number of petitioners for liens as mechanics and material-men amounting to about fifteen, the court ordered that the suits should be consolidated, for the purpose of a full and final decree.

At the March term, 1868, a jury being waived by the parties, the cause was heard upon the original and amended petitions, interpleaders, the answers of Dingledine and Van Olinda and others, and replications thereto, and a decree rendered that Wilber pay, within four months, all costs and the several amounts found by the court to be due the lien creditors, and in default of payment, that the premises be sold to satisfy them. It was further found by the decree, that the premises, before the improvements were made by the petitioners, were of the value of twelve thousand dollars, and that to the extent of that value Van Olinda and Dingledine were prior incumbrancers, and that by reason of the improvements, the premises were then of the value of thirty thousand dollars, and it was ordered that the master, from the proceeds of the sale, pay, first, the fees, costs and expenses of the cause, and costs of all the causes and suits, " and it appearing to the court that the amount due Van Olinda and Dingledine upon the decree will not exceed, before the next term of court, twelve thousand dollars, the value of the premises immediately prior to the first of said mechanics' liens, it is ordered that the master pay Van Olinda and Dingledine the full amount due them ; but if the premises fail to produce money enough to pay them in full, then they should be paid *pro rata.*"

The master reported to the court, at the September term, 1868, that he had sold the premises, on default of Wilber, to Van Olinda and one Loring P. Wheeler, for eight thousand two hundred and fifty dollars, which they paid, and the master executed a deed ; that he paid all costs, etc. and then paid to Sebastian Dingledine, the oldest incumbrancer, four thousand four hundred and six dollars eighty-four cents, being his claim in full as found by the decree, and the residue, amounting to three thousand four hundred and ninety-two dollars eighty-one cents he paid to Van Olinda, and that nothing remained with which to pay mechanics' liens.

In August, 1868, a bill of review was filed to the September term by the petitioners, in which Van Olinda, Dingledine,

Bloom and Leavitt, and one Smith, were made defendants, and process served upon them, complaining of error in the original decree, in respect that Dingledine and Van Olinda are to be paid in full or *pro rata* first, and before complainants; that the decree should have been so framed as to direct eighteen-thirtieths of the proceeds, after the payment of costs, etc. should be paid *pro rata*, among complainants, and they pray that Dingledine be compelled to refund eighteen-thirtieths of the proceeds received by him, and that Van Olinda refund all he received. Dingledine answered the bill, insisting upon the decree as rendered; that he had a prior mortgage, duly recorded, before any other lien attached, and that Van Olinda had a mortgage prior to any mechanic's lien; that his rights were acknowledged and settled by the decree; that the value of the premises was correctly found by the decree, and that they, Dingledine and Van Olinda, were able to protect their interests by making the property bring money enough at the sale to pay their liens, had not their interests and priorities been protected by the decree under which the sale was made; that as the sale to Van Olinda and Wheeler can not be canceled, it would be unjust to Dingledine to deprive him of his remedy under his mortgage, and then take his money by a subsequent decree, to pay junior creditors. A replication was put in to the answer, and at the March term, 1869, a decree was entered to correct the original decree in this manner: That out of twelve-thirtieths of the proceeds of the sale, after paying costs out of the entire proceeds, the master shall pay Dingledine the amount due him, if there be sufficient; if not, then pay the whole of the twelve-thirtieths to Dingledine. But if the same be more than sufficient to pay Dingledine, the residue of the twelve-thirtieths be paid to Van Olinda, and if there be a surplus after paying him, then the residue to be applied, with the eighteen-thirtieths, to the lien creditors, *pro rata*; and the court finds the sale to Van Olinda and Wheeler for eight thousand two hundred and fifty dollars, the amount of Dingledine and Van Olinda's several claims, and the payment to them, as under the original

decree, and then finds that twelve-thirtieths of the proceeds of the premises amount to thirty-three hundred dollars, and then decrees that, to that extent, Dingledine is entitled to be paid from that share of the proceeds, and that Van Olinda being a junior incumbrancer to Dingledine, and there not being sufficient to pay Dingledine in full, he, Van Olinda, is entitled to no portion of the twelve-thirtieths. It was then ordered and decreed that Dingledine, within ten days from the rendition of the decree, refund to the master eleven hundred and six dollars eighty-four cents, being the excess of these proceeds, to be distributed to the lien creditors. It was further ordered, in the event of a refusal by Dingledine to refund this amount within ten days, that then a *fi. fa.* issue in the name of the special master against Dingledine's goods and chattels, lands and tenements, with like force and effect as upon a judgment at common law.

To reverse this decree, Dingledine has appealed to this court, assigning several errors.

We have not considered the minor objections raised by appellant to this decree, but only the central question involved, as connected with the equity of the case as it appears to us, on a full consideration thereof.

It may be there was error in the original decree in respect to the rule laid down for the distribution of the proceeds of the sale of these premises, but under the circumstances, we are of opinion that it can not be corrected on this bill of review without disturbing the rights of innocent parties which have become fixed under that decree.

That decree declared that the debt of Dingledine, which was a first lien on the premises, should first be paid out of the proceeds of the sale, and that Van Olinda, who held a second incumbrance, should be paid next in order, and that the balance, if any, should be distributed *pro rata* among the other lien creditors.

Under this assurance Dingledine, when he saw the bids had reached the amount of his debt, had no further interest in

watching the sale, and had a perfect right to cease all concern about it; but if, on the other hand, had the rule for distribution, which this new decree lays down, been established, he might have been stimulated to force the property up by offering a higher price himself, when, perhaps, he did not desire to become a purchaser. After a sale made under such assurances contained in a decree of the court, we deem it highly inequitable to change the rule of distribution and make Dingledine pay back a part of the money which he justly received in payment of his debt.

The same view must be taken of Van Olinda's position. He was assured by the first decree, that after the debt to Dingledine was paid, the balance of the purchase money, or so much of it as might be necessary, should be applied to the payment of his debt, and under that assurance he, in conjunction with Wheeler, run the property up to a certain amount, at which they became the purchasers, although that amount was not sufficient to pay him in full after paying Dingledine. When he made that bid, he knew how much of the purchase money he could pay with his own debt, and how much he would be required to pay in cash, to satisfy the prior incumbrance. The very statement of the case, it seems to us, shows how inequitable it is for parties to come in afterwards, and make him pay a larger amount of money, in cash, on his purchase, than the court under whose order the sale was made, had assured him he would be required to pay. That would be making new terms for the purchaser, to which he had never assented, and would be inconsistent with every principle of equity.

The other lien creditors, the complainants in the original bill, were content to let the property be sold at a price which they knew would leave nothing to be distributed to them, under the rule of distribution laid down in the decree under which the sale was made, and they made no effort to advance the bids to higher figures. This being so, we are unable to appreciate the justice which would allow them to come in and take a

share of the purchase money, to which they are not entitled by the decree. If dissatisfied with the rule of distribution laid down in that decree, they should have complained of it in some legitimate mode, before it was so far executed as to vest in innocent parties, rights which ought not to be disturbed, but which must be, in order to correct the supposed error of which they complain. They were content to remain silent when they should have spoken, and can not now be heard when justice demands their silence.

We are not aware of any mode by which the error can be corrected in the original decree, if there be one, without setting ·aside the sale, and commencing the execution of the decree *de novo*, by ordering a re-sale. Possibly this might be done, had Van Olinda alone been the purchaser, but Wheeler, a stranger to the record, has acquired rights by the purchase, of which this court has no power to deprive him. He is not chargeable with any error which may be supposed to exist in the decree under which he purchased, and as this court has often said, it is the highest policy of the law, that purchasers at such sales should feel the most perfect confidence that they are acquiring titles which can not be disturbed; any other rule would be productive of much evil.

The complainants in the original bill were content to let the property go to sale under a decree giving to Dingledine payment in full out of the first twelve thousand dollars the property might bring, and it would now be very unjust to make a new decree for distribution, on the basis of the old sale, when the result of that sale might have been very different on a decree such as has been now rendered on this bill of review.

The error, if there be one, in the original decree, can not now be corrected, for the reasons we have given.

The decree of the circuit court on the bill of review must be reversed, and the original decree must remain in full force, conforming, as it does, to the rule announced in *Croskey* v. *N. W. Manuf. Co.* 48 Ill. 481.

*Decree reversed.*